ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LIBERTY MOBILE PUERTO RICO, INC.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES<br><br>Recurridos | TA2026RA00213 | *Revisión Judicial* procedente de la Junta de Subastas de la Administración de Servicios Generales<br><br>Subasta Formal Núm.: 26J-12277<br><br>Sobre: Adquisición de Servicios de Telefonía Móvil para el Departamento de la Familia del Gobierno de Puerto Rico |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de mayo de 2026.

Comparece la parte recurrente, Liberty Mobile Puerto Rico, Inc. (Liberty) mediante un recurso de revisión judicial. Solicita nuestra intervención para revocar la *Resolución de Rechazo Global* notificada el 17 de marzo de 2026 por la parte recurrida, Junta de Subastas de la Administración de Servicios Generales (Junta de Subastas). En la referida determinación administrativa, el organismo administrativo rechazó las ofertas de todos los postores, al estimar que adolecían de defectos insubsanables.

**I.**

El 23 de enero de 2026, la Junta de Subastas publicó el *Aviso* de la Subasta Formal 26J-12277 para adquirir servicios de telefonía móvil para el Departamento de la Familia.[2] Se pautó la reunión presubasta para el 29 de enero de 2026 a la 1:30 de la tarde; la entrega de pliegos se convocó hasta el 19 de febrero de 2026 a las 10:30 de la mañana; y el acto de apertura se fijó en la misma fecha a la 1:30 de la tarde. Cabe mencionar

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.
[2] Apéndice, págs. 32-43.

que las *Especificaciones Generales*[3] de la *Invitación y Pliego de Subasta Formal Núm. 26J-12277*[4] fueron objeto de una enmienda el 12 de febrero de 2026; a saber, para añadir que el sistema operativo del equipo fuera Android y que el soporte de la actualización del sistema operativo fuera de cuatro a cinco años. Entre las condiciones generales que se mantuvieron incólumes en la oferta se encontraban que las condiciones técnicas y comerciales debían estar claramente detalladas y que no se permitirían cargos ocultos ni condiciones no especificadas.

En la fecha y hora señaladas, la Junta de Subastas recibió físicamente y por vía electrónica tres ofertas de los siguientes postores:[5] Liberty,[6] Puerto Rico Telephone Company, Inc. (Claro)[7] y T-Mobile Puerto Rico, LLC (T-Mobile).[8] En resumen, mediante la *Tabla de Oferta* provista,[9] la Junta de Subastas solicitó tres partidas a base de un Precio Unitario y un Precio Total: (1) COSTO DE EQUIPO (TELÉFONO), predeterminando la cuantía en 1,375 unidades; (2) PLAN DE TELEFONÍA MÓVIL; y (3) ESTIMADO DE OTROS CARGOS POR SERVICIO.

Liberty ofreció el Galaxy A16 5G de Samsung y un plan de telefonía móvil denominado "Liberty Mix Essencial", entre otros, incluía voz, datos, SMS y MMS ilimitados en Puerto Rico, Estados Unidos y el resto de América del Norte, así como 100 GB de *Hot Spot*. El precio unitario de **$22.00** multiplicado por la cantidad de 1,375 totalizaron un precio de **$30,250.00** mensuales. En cuanto a los cargos por servicio,[10] la oferta de Liberty estableció un precio unitario anual de **$6.48** ($0.54 x 12 meses) y **$12.96** ($0.54 x 24 meses) por el contrato de dos años por línea.[11] Se indicó en la

---

[3] Apéndice, págs. 44-46; Copia Certificada del Expediente Administrativo, págs. 180-181.
[4] Apéndice, págs. 1-31.
[5] Refiérase a *I. Instrucciones Generales*, inciso 8, *Fecha, Hora y Modo de Entregar la Oferta*; Apéndice, págs. 4-5.
[6] Véase, Copia Certificada del Expediente Administrativo, págs. 324-378 y Apéndice, págs. 47-104.
[7] Véase, Copia Certificada del Expediente Administrativo, págs. 194-260.
[8] Véase, Copia Certificada del Expediente Administrativo, págs. 261-323.
[9] Copia Certificada del Expediente Administrativo, pág. 79.
[10] Entre éstos: servicio estatal universal estatal: 0.0465%; servicio estatal universal federal: 0.1395%; y un cargo por servicio de emergencia: $0.50.
[11] Copia Certificada del Expediente Administrativo, pág. 325 y Apéndice, pág. 74. A la pág. 57 del Apéndice, Liberty presenta el precio unitario mensual de $0.54 y un precio total mensual de $742.50 ($0.54 x 1,375).

garantía que los cargos regulatorios eran estimados y podían cambiar durante el término del contrato. Asimismo, en lo que concierne al caso de autos, en la oferta sometida a través de la plataforma electrónica, Liberty incluyó la nota que reproducimos: "*En la tabla anejada de oferta en el estimado de cargos regulatorios el precio unitario es el cargo mensual de $0.54 por 12 meses que es $6.48 y el precio total es $12.96 que es el total de 1 unidad por el periodo de 24 meses. Cada unidad la mensualidad es $22.00 por el servicio y $0.54 de cargos regulatorios*".[12]

Por su parte, en su *Informe sobre Subasta Núm. 26J-12277*, fechado el 11 de marzo de 2026,[13] la Junta de Subastas sí supo computar el coste de cargos por unidad en $12.96 por el término del contrato de dos años ($0.54 x 24 meses), aun cuando no hizo referencia a la oferta sometida electrónicamente y la clarificación allí incluida. Consignó que los cargos estimados regulatorios eran estimados, pudiendo cambiar durante el término del contrato.[14] Como motivo de rechazo, indicó que se requería que la tercera partida "fuera clara y que especificara si los cargos adicionales presentados correspondían a cargos por unidad o al costo total".[15]

De otro lado, del expediente administrativo se desprende que Claro ofreció el Samsung A36 5G. Pujó **$34,375.00** lo que dividido por la cantidad de 1,375 totalizó un precio unitario de **$25.00**.[16] En general, entre otros, el plan incluía servicios de voz y datos, llamadas locales y larga distancia nacional ilimitadas, SMS, MNS y 50 GB de *Hot Spot*. No obstante, la Junta de Subastas apuntó que Claro añadió una partida para "Otros

---

[12] Apéndice, pág. 73. Además, tras haberse celebrado el acto de apertura ese 19 de febrero de 2026, a las 4:46 de la tarde, Liberty cursó un correo electrónico a la Junta de Subastas para reafirmar que los precios unitarios eran mensuales; esto es: $22.00 por la línea; $0.54 por cargos; para un total por unidad mensual de $22.54. Expresó: "*Esta aclaración est[á] en la nota electrónica. Ya que la hoja electrónica del sistema multiplicaba el n[ú]mero por el t[é]rmino de 2 años*". Aludió también a un fragmento del inciso 8 de la *Invitación y Pliego de Subasta Formal Núm. 26J-12277*, que versa sobre la entrega de la oferta. El organismo administrativo acusó recibo el 2 de marzo de 2026, a las 5:26 de la tarde, mediante el sistema de soporte de la plataforma. La comunicación indicó a través del "Soporte Técnico JEDI" un estatus de "Resolved" o resuelto. Apéndice, págs. 105; 107-110.
[13] Copia Certificada del Expediente Administrativo, págs. 380-385 y Apéndice, págs. 111-116.
[14] Apéndice, pág. 116.
[15] Apéndice, pág. 113.
[16] Copia Certificada del Expediente Administrativo, pág. 195.

Cargos Mensuales", los cuales **no fueron contabilizados en el formulario**.[17] Además, aun cuando la Junta de Subastas verificó que Claro era parte del Registro Único de Licitadores (RUL), el postor no anejó su certificado de elegibilidad, aprobado hasta el 7 de marzo de 2026. La Junta de Subastas concluyó que Claro no siguió las instrucciones ni representaba el mejor valor para el Gobierno de Puerto Rico.[18]

Por su parte, T-Mobile ofreció el Xcover Pro 7 de Samsung y, como alternativa, el Galaxy S25. Licitó un valor unitario mensual de **$35.00** y cargos reglamentarios en **$5.49** por línea al mes,[19] lo que totaliza **$40.49** mensuales por unidad. En cuanto a los cargos, computó **$181,170** por el término contractual de dos años ($5.49 x 1,375 x 24 meses).[20] Se indicó que el "Government Advanced Plan", entre otros, ofrecía beneficios *premium* diseñados para cuentas gubernamentales con necesidades avanzadas de conectividad. Incluía llamadas y mensajes ilimitados, *roaming* nacional ilimitados y 61 GB de *Hot Spot*. Sin embargo, la Junta de Subastas identificó discrepancias entre la oferta sometida de manera física y la electrónica. También apuntaló que T-Mobile no ofrecía el mejor valor.[21]

En suma, surge del *Informe*, la recomendación de un rechazo global de las ofertas recibidas. "Tras la evaluación de las Tablas de Ofertar presentadas por los tres licitadores, se identificaron incongruencias en los precios y en la informacion incluida en dichas Tablas".[22]

*A contrario sensu*, el 26 de febrero de 2026, la Administración de Familias y Niños (ADFAN) del Departamento de la Familia —recipiente de los productos y servicios de la Subasta Núm. 26J-12277— refrendó a Liberty como el mejor postor, al licitar el costo más bajo de "$30,262.96 mensuales".[23] La agencia estableció en su misiva que los costos de T-Mobile

---

[17] *Id.*
[18] Apéndice, págs. 113-116.
[19] En el *Informe* se consignó la cifra de $15,097.50, lo que equivale a dos meses de cargos por la totalidad de unidades ($5.49 x 1,375 x 2).
[20] Copia Certificada del Expediente Administrativo, págs. 262 y 282.
[21] Apéndice, págs. 113, 115-116.
[22] Apéndice, pág. 112.
[23] Copia Certificada del Expediente Administrativo, pág. 386 y Apéndice, pág. 106.

eran de $63,222.50 y Claro de $34,375.00. La misiva fue suscrita por el Administrador Auxiliar de ADFAN, Rafael López Aroche.

Así las cosas, la Junta de Subastas dictó la *Resolución de Rechazo Global* impugnada.[24] Hizo constar las siguientes expresiones:

> Puerto Rico Telephone Company, Inc., sometió su oferta con un precio total en la partida número 2, del cual no es posible determinar si es por la totalidad del contrato o si es un cargo mensual. Además, dicha oferta cuenta con un desglose de cargos adicionales de los cuales no hay certeza si fueron contabilizados en su oferta total. Estableció que los cargos de servicio universal federal y de PR varían trimestralmente y que se debe presupuestar un 10% adicional para cubrir los mi[s]mos. Esto representa una oferta incierta de la cual no se puede determinar si representa el mejor valor para el Gobierno de Puerto Rico. Por otra parte, la tabla de ofertar presentada fue alterada con información que no forma parte del documento provisto que originalmente se incluyó con el pliego.

> Liberty Mobile Puerto Rico, Inc., sometió su oferta con un precio total en la partida número 2, del cual no es posible determinar si es por la totalidad del contrato o si es un cargo mensual. Además, indica en la partida número 3 que la garantía de los cargos regulatorios, son estimados y pueden cambiar durante el término del contrato. Según las condiciones e instrucciones especiales del Pliego, "*el licitador tendrá que establecer el término de entrega y la garantía de los productos. Estos términos podrán ser un factor determinante al momento de adjudicar. Los términos aquí requeridos deberán expresarse en formato de días, semanas, meses o años*".

> T-Mobile Puerto Rico, LLC, sometió una tabla de ofertar alterada y con errores matemáticos que exceden el margen de error permisible. Por ejemplo, la partida número 2 establece como cantidad (1375), y para ello el licitador estableció como precio unitario $35.00 y un total de $55,673.75. Al realizar la operación correspondiente, el total obtenido es de $48,125.00. Por otra parte, la partida número 3 dispuso como cantidad (2), y para ello el licitador estableció como precio unitario $5.49 y un total de $181,170.00. Al realizar el cálculo correspondiente, el total obtenido no es el incluido en la oferta. Además de los errores matemáticos, las cantidades incluidas no nos permite determinar la frecuencia de los cargos o si estos corresponden a la totalidad del contrato, convirtiéndola en una oferta incierta.

Ante lo expuesto, la Junta de Subastas concluyó que ninguna de las ofertas cumplió con los requisitos reglamentarios ni representaban el mejor valor. Determinó, pues, el rechazo global de la trilogía de licitadores.

---

[24] Copia Certificada del Expediente Administrativo, págs. 392-398 y Apéndice, págs. 117-122.

Inconforme, el 27 de marzo de 2026, Liberty presentó una *Solicitud de Revisión Administrativa de la Subasta Formal Núm. 26J-12277 para "Servicios de Telefonía Móvil" del Departamento de la Familia.*[25] Anejó la decisión recurrida (Anejo A);[26] la *Tabla de Oferta* (Anejo B);[27] imágenes de la presentación electrónica de la oferta a través de la plataforma de la agencia, de las cuales se aprecia la nota electrónica antes citada (Anejo C);[28] un correo electrónico cursado (Anejo D);[29] y el correo electrónico remitido por el ente administrativo en respuesta a la comunicación de Liberty (Anejo E).[30]

Citamos los argumentos de Liberty en apoyo a su petición de revisión:

Primero, es importante señalar de entrada que Liberty no incumplió con los Pliegos de la Subasta. Distinto a lo concluido por la Junta, la oferta de Liberty incluyó desde un principio un precio de $22.00 mensuales por línea telefónica para la Partida núm. 2. Dicha oferta era clara y no adolecía de vicio alguno. Incluso, el carácter mensual de los cargos fue objeto de una nota electrónica aclaratoria, sometida junto con la oferta, que especificó: "cada unidad la mensualidad es $22.00 por el servicio y $0.54 de cargos regulatorios".

Segundo, en la alternativa, la calificación de los alegados defectos de Liberty como "insubsanables" es contraria a derecho. No sólo era evidente que la oferta fue por $22.00 mensuales por línea desde un principio, sino que ello fue aclarado expresamente el mismo día de sometida la oferta, según permitido en la pág. 16 de los pliegos y la jurisprudencia aplicable. El mismo día del Acto de Apertura, a las 4:42 p.m., Liberty cursó una comunicación a la Junta aclarando nuevamente que el precio de $22.00 era un cargo mensual por veinticuatro (24) meses. Esta aclaración fue registrada como Ticket #03051 y fue marcada como "resuelta" por la Junta el 2 de marzo de 2026, dos semanas antes de que la Junta emitiera su Resolución. La Resolución no hizo mención de esta

---

[25] Apéndice, págs. 123-134.
[26] Apéndice, págs. 135-140.
[27] Apéndice, pág. 141; refiérase también a la nota al calce 11 de este dictamen.
[28] Apéndice, págs. 142-146.
[29] Apéndice, pág. 147; véase, nota al calce 12 de este dictamen.
[30] Apéndice, págs. 148-151.
Con relación a la comunicación electrónica, el emisor, support@asg.pr.gov, dirigió el siguiente mensaje a la representante de Liberty:

Dear,
We are pleased to inform you that your ticket with reference #03051 - **Acalaración** [*sic*] **precio unitario Liberty Mobile- Subasta Formal 26J-12277** has been resolved.

| Reference: | #03051 |
|---|---|
| Subject: | Acalaración [*sic*] precio unitario Liberty Mobile- Subasta Formal 26J-12277 |

aclaración ni del hecho de que previamente fuese marcada como "resuelta".

Tercero, la Partida núm. 3 sobre "Estimado de Otros Cargos por Servicio" requería describir los cargos regulatorios aplicables. La representación que hizo Liberty a los efectos de que estos cargos "pueden cambiar" no constituye una deficiencia de la oferta, sino una declaración fáctica inherente a la naturaleza de cualquier cargo regulatorio. Incluso, esta realidad está contemplada expresamente en la cláusula de ajuste de precio ("*Escalation Clause*") del pliego, la cual reconoce la posibilidad de variaciones de estos cargos durante la vigencia del contrato. Por lo tanto, la aclaración de Liberty no contravino las Condiciones e Instrucciones Especiales del pliego, sino que es plenamente consistente con ellas.

En la misma fecha en que expiró el plazo de diez días para que la Junta Revisora de Subastas de la Administración de Servicios Generales acogiera o rechazara la solicitud, el 6 de abril de 2026, la Junta de Subastas convocó la Subasta Formal Núm. 26J-12277-R1 para adquirir servicios de telefonía móvil para la ADFAN, con las mismas especificaciones generales. Esta vez, la fecha de entrega de las ofertas se pautó para el 1 de mayo de 2026 a las 10:30 de la mañana; y el acto de apertura, el mismo día a la 1:30 de la tarde.[31]

Así las cosas, el 27 de abril de 2026, Liberty ejercitó su derecho a recurrir la decisión administrativa e instó el recurso de revisión judicial del título.[32] En su recurso, Liberty esbozó la comisión de los siguientes errores:

ERRÓ LA JUNTA DE SUBASTAS DE LA DMINISTRACIÓN DE SERVICIOS GENERALES AL CONCLUIR QUE LIBERTY NO ESPECIFICÓ SI SU OFERTA PARA LA PARTIDA NÚMERO 2 ERA "POR LA TOTALIDAD DEL CONTRATO O SI [ERA POR] UN CARGO MENSUAL", CUANDO LIBERTY ESPECIFICÓ EL CARGO MENSUAL COMO PARTE DE SU OFERTA, SEGÚN RECONOCIDO POR LA JUNTA Y EL DEPARTAMENTO DE LA FAMILIA, QUIEN SOLICITÓ QUE SE LE ADJUDICARA LA SUBASTA A LIBERTY POR OFRECER EL CANON MENSUAL MÁS BAJO.

ERRÓ LA JUNTA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES AL CONCLUIR QUE LIBERTY INCUMPLIÓ CON LOS PLIEGOS AL REPRESENTAR QUE LOS CARGOS REGULATORIOS DE LA PARTIDA NÚMERO 3 "PUEDEN CAMBIAR DURANTE EL TÉRMINO DEL CONTRATO", PUES ELLO ES UNA REALIDAD COBIJADA EN

---

[31] Apéndice, págs. 152-196.
[32] Entrada 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

LA CLÁUSULA DE AJUSTE DE PRECIO ("ESCALATION CLAUSE") DE LOS PLIEGOS.

Liberty acompañó el escrito con una *Moción en Auxilio de Jurisdicción*.[33] El 28 de abril de 2026, dictamos una *Resolución* y declaramos Ha Lugar la solicitud del recurrente.[34] Ahora bien, la Administración de Servicios Generales (ASG) desacató el pronunciamiento de paralización y la Junta de Subastas celebró el acto de apertura de la Subasta Formal Núm. 26J-12277-R1.[35] A esos efectos, luego de solicitar la postura de la agencia,[36] nos vimos obligados a emitir una nueva *Resolución* el 6 de mayo de 2026 para reafirmar la paralización de todo procedimiento vinculado a la adquisición de servicios de telefonía móvil para la ADFAN, adscrita al Departamento de la Familia del Gobierno de Puerto Rico. Además, decretamos la nulidad de las gestiones *ultra vires* realizadas por el organismo administrativo.[37]

Posteriormente, evaluamos la petición para reconsiderar nuestra determinación y la declaramos no ha lugar el 7 de mayo de 2026. Por igual, ordenamos la presentación de la copia certificada del expediente administrativo, lo cual sí fue cumplido.[38] Ante una nueva comparecencia de la ASG, a la que anejó una comunicación de la Secretaria del Departamento de la Familia, Suzanne Roig Fuertes, nuestra orden de paralización tuvo que ser reiterada por tercera ocasión el 8 de mayo de 2026.[39]

La agencia recurrida presentó su *Alegato en Oposición de la Administración de Servicios Generales, Oposición al Auxilio de Jurisdicción y en Cumplimiento de Orden*.[40] El licitador Claro también instó su postura mediante una *Oposición a Recurso de Revisión Judicial*.[41] Por su parte,

---

[33] Entrada 2 SUMAC-TA.
[34] Entrada 3 SUMAC-TA.
[35] Entrada 8 SUMAC-TA.
[36] Entrada 9 SUMAC-TA.
[37] Entrada 12 SUMAC-TA.
[38] Entradas 13, 15 y 18 SUMAC-TA.
[39] Entradas 16-17 SUMAC-TA.
[40] Entrada 11 SUMAC-TA.
[41] Entrada 6 SUMAC-TA.

T-Mobile no se ha expresado durante el proceso ante nos. Con el beneficio de las comparecencias, resolvemos.

## II.

### A.

Revisamos la *Resolución de Rechazo Global* en el caso del epígrafe, al palio del Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.* (Ley Núm. 201-2003), el cual dispone que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". 4 LPRA sec. 24u; además, Art. 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y. En consonancia, la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.*, establece un procedimiento uniforme de revisión judicial a la acción tomada por una agencia de Gobierno al adjudicar un caso. En particular, la Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, estatuye que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho.

Mediante la revisión judicial, esta curia debe evaluar que la decisión administrativa encuentre apoyo en la evidencia sustancial que obre en la totalidad del expediente administrativo. El concepto *evidencia sustancial* se ha definido como aquella "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953), refrendados en *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019). Por ello, el *expediente administrativo* constituye la base exclusiva para la decisión de la agencia

en un procedimiento adjudicativo, así como para la revisión judicial ulterior. Sec. 3.18 de la LPAUG, 3 LPRA sec. 9658; *Graciani Rodríguez v. Garaje Isla Verde, supra,* pág. 128. Por igual, examinamos que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar. Finalmente, auscultamos que el organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya lesionado derechos constitucionales fundamentales. Véase, *Torres Rivera v. Policía de PR,* 196 DPR 606, 628 (2016).

Por consiguiente, al momento de justipreciar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales tenemos la obligación de ejercer un juicio independiente de las disposiciones legales para determinar si una agencia ha actuado o no dentro de los límites de su autoridad estatutaria, incluso en los casos de ambigüedad legislativa. Véase, *Loper Bright Enterprises v. Raimondo,* 144 S.Ct. 2244 (2024); 603 US __ (2024);[42] *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR __ (2025).[43] Según ha pautado el Tribunal Supremo federal y ha refrendado nuestro alto foro, las interpretaciones y los dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— podrían constituir un cuerpo de experiencia y un juicio informado ("body of experience and informed judgment") al que los foros revisores y los litigantes pudiéramos recurrir en cuestiones jurídicas. *Id.,* pág. 2259; *Vázquez v. Consejo de Titulares, supra.* Ahora, el peso persuasivo de la determinación administrativa va a depender de la minuciosidad en su consideración, de la validez de su razonamiento, así como de su congruencia con pronunciamientos anteriores y posteriores.

---

[42] En *Loper Bright Enterprises v. Raimondo, supra,* resuelto el 28 de junio de 2024, el Tribunal Supremo federal revocó la doctrina de deferencia establecida en el caso *Chevron USA, Inc. v. Natural Resources Defense Council,* 467 US 837 (1984). Con ello, además, se propende al fortalecimiento de la separación de poderes. Véase, *Loper Bright Enterprises v. Raimondo, supra,* pág. 2274 (Op. Conc. Juez Thomas).
[43] Opinión de 21 de mayo de 2025 (Hon. Kolthoff Caraballo).

Véase, *Skidmore v. Swift & Co.*, 323 US 134, 139-140 (1944), citado con aprobación en *Loper Bright Enterprises v. Raimondo, supra*, pág. 2259. Así, pues, el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Torres Rivera v. Policía de PR, supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012); además, *Vázquez v. Consejo de Titulares, supra*.[44]

**B.**

Como se conoce, el proceso de adquisición y contratación de bienes y servicios por parte del aparato gubernamental está revestido del más alto interés público, toda vez que se aspira "promover la *inversión adecuada, responsable y eficiente de los recursos del Estado*". (Cursivas en el original). *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA General Contractors, Inc. v. Municipio*, 200 DPR 665, 672 (2018). De ordinario, el procedimiento de subasta es el vehículo utilizado por el Gobierno en la adquisición de bienes y servicios. *Super Asphalt v. AFI y otro, supra*, págs. 820-821; *ECA General Contractors, Inc. v. Municipio, supra*, pág. 672. "[L]a subasta gubernamental procura establecer un esquema que asegure la competencia equitativa entre los licitadores, evite la corrupción y minimice los riesgos de incumplimiento". *Super Asphalt v. AFI y otro, supra*, pág. 821; *ECA General Contractors, Inc. v. Municipio, supra*, págs. 672-673.

A esos fines, la Ley Núm. 73 de 19 de julio de 2019, *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA sec. 9831 *et seq.*, establece como política pública "la optimización del nivel de efectividad y eficiencia de la gestión gubernamental, la agilización de los procesos de adquisición de bienes y servicios mediante el uso de avances tecnológicos, la reducción del gasto público, la asignación estratégica de recursos y la

---

[44] Opinión de Conformidad del Hon. Estrella Martínez.

simplificación de los reglamentos que regulan las adquisiciones del Gobierno de Puerto Rico". Art. 2, Ley Núm. 73-2019, 3 LPRA sec. 9831a. En armonía con lo anterior, se creó la Junta de Subastas, con la facultad de evaluar y adjudicar las subastas del Gobierno de Puerto Rico, de conformidad con la reglamentación uniforme. Arts. 4 (a) y 47, Ley Núm. 73-2019, 3 LPRA secs. 9831c (a) y 9836. Al respecto, el Artículo 25 de la Ley Núm. 73-2019, 3 LPRA sec. 9834a, estatuye que las disposiciones de la reglamentación uniforme se aplicarán a todos los procesos de compras y subastas realizadas por las entidades gubernamentales. Igualmente, el Artículo 51 del estatuto, 3 LPRA sec. 9836d, establece que la Junta de Subastas descargará sus funciones en cumplimiento con la referida reglamentación uniforme.

En lo concerniente al caso del epígrafe, al momento en que se emitió el *Aviso* de la Subasta Formal 26J-12277, estaba en vigor el Reglamento Núm. 9230 de 18 de noviembre de 2020, según enmendado, *Reglamento Uniforme de Compras, Licitaciones y Contrataciones de Bienes, Obras y Servicios No Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico.*[45] El Artículo 7.3 conduce la subasta formal, la cual está contemplada para las adquisiciones que excedan los cien mil dólares.

El inciso 8 de la Sección 7.3.9 del Reglamento Núm. 9230, *Presentación de ofertas para la subasta formal,* establece que "[s]i ello fuere necesario, los licitadores podrán añadir hojas para aclarar o describir más detalladamente sus ofertas". Cónsono con lo dicho, en la *Invitación y Pliego de Subasta Formal Núm. 26J-12277* se instruyó a los licitadores a adicionar páginas para detallar sus ofertas, las cuales podrán ser completadas a

---

[45] Véase, el Artículo 21.4, *Transición*, del Reglamento Núm. 9734, *Reglamento Uniforme de Compras, Licitaciones y Contrataciones de Bienes, Obras y Servicios No Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico,* presentado el 9 de febrero de 2026 y vigente a partir de 11 de marzo de 2026, el cual derogó la reglamentación citada en el cuerpo de este dictamen. "Todo proceso de licitación que haya sido publicado y se encuentre pendiente de adjudicación a la fecha de entrada en vigor de este Reglamento, se regirá por lo dispuesto en el pliego y las normas vigentes al momento de su publicación".

manuscrito con letra legible o utilizando cualquier medio tecnológico y en papel timbrado del licitador.[46]

En cuanto a las *Normas de Adjudicación* que siguen al *Acto de apertura*, el Reglamento Núm. 9230, en la Sección 7.3.17, inciso 3, *Rechazo de oferta más baja*, establece los fundamentos, los cuales deben hacerse constar detalladamente: (a) conocimiento y evidencia de incumplimientos contractuales del licitador con la ASG u otras entidades gubernamentales; (b) productos de calidad inferior a las especificaciones del pliego; (c) incumplimientos con las especificaciones, requisitos o términos de la subasta formal; (d) experiencia previa insatisfactoria de la ASG con la garantía o el funcionamiento del renglón ofrecido; (e) la oferta no representa el mejor valor para el Gobierno de Puerto Rico.

Con relación al *Rechazo Global*, el inciso 10, reza como sigue:

Se podrá rechazar cualquiera o todas las ofertas para una subasta formal en las situaciones siguientes:

a. Los licitadores no cumplan con alguno de los requisitos, especificaciones o condiciones estipuladas.
b. Los precios obtenidos sean irrazonables o los términos resulten onerosos.
c. Cuando las ofertas demuestren que los licitadores controlan el mercado del producto solicitado y se entienda que se han puesto de acuerdo entre sí para cotizar precios excesivos. En tal caso, se realizará el referido correspondiente al Departamento de Justicia.

De ocurrir alguna de las circunstancias antes mencionadas, la Junta de Subastas deberá emitir una segunda convocatoria del proceso. Sólo en caso de que las ofertas recibidas en dicha convocatoria resulten nuevamente en las circunstancias arriba mencionadas, procederá el trámite de compra excepcional. La Junta de Subastas deberá levantar un acta de cada proceso en la cual exponga detalladamente la situación particular acaecida como resultado de cada convocatoria. Ambas actas deberán obrar en el expediente, como requisito previo al trámite de compra excepcional.

Del mismo modo, el inciso 11 de la precitada Sección 7.3.17, *Desviaciones permisibles*, estatuye que la Junta de Subastas podrá aceptar desviaciones mínimas en las especificaciones, términos y condiciones de las ofertas recibidas, siempre y cuando concurran los siguientes requisitos:

---

[46] Refiérase a *I. Instrucciones Generales*, inciso 1, *Formulario*, Apéndice, pág. 2.

a. Ningún licitador ofrezca el bien o servicio no profesional con las especificaciones requeridas;

b. no se afecte el propósito original a que está destinada la subasta y;

c. el precio cotizado sea competitivo y comparable con el prevaleciente en el mercado.

La Junta de Subastas se reserva el derecho de obviar cualquier informalidad o diferencia de menor importancia en los términos y condiciones, si cumple con el propósito para el que se solicitan y resulta beneficioso para el Gobierno de Puerto Rico. Las desviaciones no podrán afectar sustancialmente la calidad, capacidad o características esenciales de los artículos o servicios solicitados. Deberá incluirse en el expediente de la subasta un memorando explicativo de la desviación permitida.

Finalmente, el inciso 12 sobre *Adjudicación*, según enmendado,[47] expresa en lo pertinente que "[l]a Junta de Subastas adjudicará la buena pro al licitador responsivo que haya ofertado el mejor valor".

### III.

En la causa presente, la Junta de Subastas dirimió la trilogía de ofertas para la adquisición de servicios de telefonía móvil para la ADFAN, adscrita al Departamento de la Familia, según convocado en la Subasta Formal Núm. 26J-12277. En cuanto a la parte recurrente, a pesar de que Liberty ofertó el plan más económico, la Junta de Subastas la descartó junto al resto de las ofertas licitadas.

En el caso de T-Mobile, según las cifras ofertadas, mensualmente, el plan de telefonía y los cargos ascendían a 55,673.75 (\$35.00 + \$5.49 x 1,375). Esto es \$1,336,170.00 en el término de 24 meses.[48] La Junta de Subastas imputó arbitrariamente a T-Mobile haber cometido errores matemáticos. Dijo: "[L]a partida número 2 establece como cantidad (1375), y para ello el licitador estableció como precio unitario \$35.00 y un total de \$55,673.75. Al realizar la operación correspondiente, el total obtenido es de \$48,125.00". Obviamente, la cifra de \$48,125.00 no incluye los cargos reglamentarios mensuales; mientras que la cuantía de \$55,673.75 equivale al plan y los cargos mensuales de las 1,375 unidades.

---

[47] Refiérase al Reglamento Núm. 9292 de 23 de julio de 2021, que enmendó ésta entre algunas otras disposiciones del Reglamento Núm. 9230.

[48] \$35.00 + \$5.49 x 1,375 unidades = \$55,673.75 mensuales x 24 meses (dos años).

Acerca de la tercera partida de T-Mobile, la Junta de Subastas expresó: "[L]a partida número 3 dispuso como cantidad (2), y para ello el licitador estableció como precio unitario $5.49 y un total de $181,170.00". Esto es, el total de cargos de los 24 meses (dos años) del contrato por las 1,375 unidades ($5.49 x 1,375 x 24 meses).

En torno a la licitación de Claro, la Junta de Subastas indicó que el postor ofertó el plan en la segunda partida, pero incluyó un "desglose de cargos adicionales de los cuales no hay certeza si fueron contabilizados en su oferta total. Estableció que los cargos de servicio universal federal y de PR varían trimestralmente y que se debe presupuestar un 10% adicional para cubrir los mi[s]mos. Esto representa una oferta incierta de la cual no se puede determinar si representa el mejor valor para el Gobierno de Puerto Rico". Ciertamente, Claro no fue un postor responsivo al dejar en $0.00 el recuadro de los cargos, por lo que no existían los elementos necesarios para computar su oferta total, por lo que procedía el rechazo de su propuesta.

Sobre la oferta de Liberty, el órgano administrativo asentó su decisión de rechazo en que el postor "sometió su oferta con un precio total en la partida número 2, del cual no es posible determinar si es por la totalidad del contrato o si es un cargo mensual. Además, indica en la partida número 3 que la garantía de los cargos regulatorios, son estimados y pueden cambiar durante el término del contrato".

Como cuestión de umbral, es importante recalcar que Liberty ni ha corregido ni modificado ni alterado su oferta. Como reseñamos, Liberty ofertó un plan unitario de telefonía a $22.00, con un total de $30,250.00; y los cargos unitarios por el contrato de dos años a un total de $12.96. Esto alcanza la cifra final de $743,820.00 en el término de 24 meses.[49] Los términos y las partidas fueron objeto de una nota electrónica aclaratoria sometida como parte de su oferta, según contemplan en conjunto las *Instrucciones Generales* y las *Ofertas Admisibles e Inadmisibles.*

---

[49] Plan: $22.54* x 1,375 unidades = $30,992.50 mensuales x 24 meses = $743.820.00.
*Cargos por dos años: $12.96 / 24 meses (dos años) = $0.54.

Empero, si bien Liberty clarificó al momento de ofertar electrónicamente que *"en el estimado de cargos regulatorios el precio unitario es el cargo mensual de $0.54 por 12 meses que es $6.48 y el precio total es $12.96 que es el total de 1 unidad por el periodo de 24 meses"*, somos del criterio que ni siquiera era necesaria tal aclaración, ya que sólo bastaba el examen de la propuesta en su totalidad y una calculadora funcional. Opinamos que la Junta de Subastas actuó irrazonablemente y en contravención a la reglamentación atinente. Nótese que el Reglamento Núm. 9230, vigente a los hechos que nos atañen, establece en las subastas formales la aceptación de cualquier "diferencia de menor importancia en los términos y condiciones, si cumple con el propósito para el que se solicitan y resulta beneficioso para el Gobierno de Puerto Rico". Decididamente, los hechos relatados satisfacen la norma adjudicativa, ya que Liberty fue el postor más económico.

Con respecto a la anotación sobre que los cargos regulatorios de Liberty eran "estimados y pueden cambiar durante el término del contrato", concluimos que ello no constituye una deficiencia de la oferta. Primero, la *Tabla de Oferta* establece palmariamente en la tercera partida el "ESTIMADO DE OTROS CARGOS POR SERVICIO". Segundo, los cargos regulatorios no los controla el postor, sino las agencias gubernamentales estatales y federales que los imponen. De hecho, el inciso 3, *Ajuste de Precio (Escalation Clause),* de las *III. Condiciones Generales,* advierte que "[l]os precios ofrecidos podrán estar sujetos a cambios por fluctuaciones legales (arbitrios o impuestos), […], siempre y cuando el licitador someta evidencia documentada acreditativa del aumento. El aumento en el precio establecido estará sujeto a la aprobación escrita de la Administración de Servicios Generales. Para disminuir precios bastará con la mera notificación escrita".[50] Incluso, pues, se contempla la disminución de precios. En este caso, Liberty ofreció un precio cierto en el cargo: $.054 por unidad al mes;

---

[50] Apéndice, pág. 13.

y, responsablemente, incluyó una nota relacionada con los cargos regulatorios que la propia Junta de Subastas catalogó como *estimados.*

En resumen, dos de los tres postores de la Subasta Formal 26J-12277 fueron responsivos. Por ende, no se presentaron las instancias para que procediera un rechazo global. Tanto T-Mobile como Liberty cumplieron con los requisitos y especificaciones, aun con los tropiezos del diseño de la *Tabla de Oferta.* El formulario no es precisamente el vehículo más agraciado para presentar este tipo de bien y servicio. Por un lado, en la partida dos predeterminaba la cantidad de unidades a 1,375, sin especificación temporal para el total; y en la partida tres, predeterminaba la durabilidad del contrato a dos años, sin considerar el número de unidades ni el carácter variable implícito de este tipo de cargos.

Luego de un análisis cuidadoso de la totalidad del expediente administrativo, es forzoso concluir que, entre ambos postores responsivos, T-Mobile y Liberty, el recurrente licitó la mejor oferta económica para el Gobierno de Puerto Rico. Su propuesta, además, fue avalada por escrito por la agencia recipiente ADFAN. Justipreciamos que la Junta de Subastas incidió al aplicar un rechazo global improcedente. Asimismo, estimamos que los frágiles fundamentos que la Junta de Subastas consignó para rechazar la oferta de Liberty no se asientan en la reglamentación uniforme que los obliga. Por el contrario, la Junta de Subastas estaba compelida a adjudicar la buena pro al licitador responsivo que haya ofertado el mejor valor.[51]

**IV.**

Por los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, revocamos la *Resolución de Rechazo Global* emitida el 17 de marzo de 2026 por la Junta de Subastas de la Administración de Servicios

---

[51] "La subasta pública no se trata de una hoja de cotejos; es un proceso que combina criterios subjetivos y objetivos mediante el cual el Estado convierte una necesidad pública en una obligación jurídica. Por eso, cada término, cada notificación, cada advertencia y cada foro revisor importa". K. Mercado Rivera, *Cuando el derecho administrativo se encuentra con la realidad operacional*, Microjuris, 5 de mayo de 2026. Tomado el 5 de mayo de 2026 en https://portal.pr.microjuris.com/noticias/cuando-el-derecho-administrativo-se-encuentra-con-la-realidad-operacional.

Generales. En consecuencia, se ordena la adjudicación de la Subasta Formal Núm. 26J-12277 a la parte recurrente, Liberty Mobile Puerto Rico, Inc., quien sometió la propuesta más económica y de mejor valor para el Gobierno de Puerto Rico.

A su vez, dejamos sin efecto la paralización decretada.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones